341

(C. D. 157)

GRANT ART GALLERIES *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 4, 1939)

*G. W. R. Wallace; Barnes, Richardson & Colburn,* associate counsel (*Joseph Schwartz* of counsel), for the plaintiff.

*Joseph R. Jackson,* Assistant Attorney General (*Richard H. Welsh,* special attorney, and *Joseph A. Howard, Jr.,* junior attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is a suit against the United States, arising at the port of Chicago, in which the plaintiff claims that the collector of customs assessed duty erroneously on certain articles which were entered free of duty as artistic antiquities under paragraph 1811 of the Tariff Act of 1930. There are 563 items on the invoice describing the articles herein involved many of which were not entered free of duty under paragraph 1811, but, of the items so entered, the collector classified some under that paragraph. The items which are claimed to be free of duty were assessed at 70 per centum ad valorem as decorated chinaware under paragraph 212, at 60 per centum ad valorem as decorated glass articles under paragraph 218, at 40 or 50 per centum ad valorem as household utensils under paragraph 339, at 65 per centum ad valorem as silver or silver-plated articles under paragraph 397, or at 40 per centum ad valorem as furniture under paragraph 412. On all of the merchandise entered under paragraph

1811 but not classified thereunder the collector assessed an additional duty also, under section 489, at the rate of 25 per centum ad valorem.

When the case was called for trial a member of the importing firm was called as a witness and limited his claim for free entry to the following articles which he testified were artistic and in his opinion were produced prior to 1830.

| Item No. | Description |
|---|---|
| 5. | A pair of Geo. III silver spoons. |
| 10. | A Sheffield plated cake basket & a tureen & cover. |
| 14. | A Sheffield plated cruet stand with 8 bottles. |
| 18. | A Sheffield vegetable dish & an oval tray. |
| 21. | Pr. candlesticks. |
| 23. | 1 Pr. plated entree dishes & covers. |
| 25. | Chippendale Urn table. |
| 31. | 2 Prs. French vases. |
| 60. | Old Sheffield tray. |
| 65. | Old Sheffield soup tureen. |
| 67. | 6 Georgian silver spoons. |
| 77. | Old Sheffield kettle. |
| 80. | 3 Prs. old Sheffield candlesticks. |
| 110. | 1 Whatnot. |
| 153. | 1 Mah T. O. table. |
| 170. | 1 Pr. green vases. |
| 171. | 1 Bristol vase. |
| 187. | 1 game top table. |
| 252. | 1 Entree dish. |
| 274. | 1 Table. |
| 283. | Pr. decanters. |
| 284. | Pr. decanters. |
| 304. | A Dresden group of 5 court figures on oval base. |
| 305. | Dresden group of 6 pastoral figures. |
| 306. | Dresden allegorical of 7 figures. |
| 382. | 1 Gallery table. |
| 383. | 1 Gallery table. |
| 402. | 1 Walnut & Marqueterie centre table. |
| 410. | A 4 piece Sheffield tea service. |
| 411. | 1 Canterbury. |
| 421. | 1 Inlaid chess table. |
| 423. | 2 Sheffield shell dishes. |
| 424. | 1 Sheffield vase shaped tea urn & lid. |
| 425. | 1 Sheffield plated shell dish. |
| 427. | 1 Sheffield plated tea tray. |
| 459. | 3 Fire brasses. |
| 460. | 3 Fire brasses. |
| 471. | Georgian Mah. 3 pedestal dining table. |
| 473. | 1 Sheffield coffee pot. |
| 475. | 1 Sheffield tea pot. |
| 479. | 1 Sheffield salvar. |
| 488. | 1 Sheffield tea tray. |
| 489. | 1 Sheffield tea tray. |
| 491. | 1 Sheffield sugar basin & 1 cream ewer. |

The plaintiff makes no claim on other articles which were entered free of duty under paragraph 1811 but were returned by the collector as dutiable under the various paragraphs applicable thereto.

At the trial three witnesses were called by the plaintiff and two by the defendant, all of whom were experienced in antiques, and their testimony indicates that they were qualified to give expert testimony on the subject. Mr. Grant, a member of the importing firm, testified that he has been with the company since 1920; that he personally buys and sells antiques and works of art and has been so engaged since 1920; that he has bought antiques in England, France, Belgium, Holland, Italy, and America; that he has made a study of antiques by contact with the things brought into the store, by examining the statements made at the time they were brought in, and by study in books and in museums such as the Metropolitan in New York, Victor and Albert in London, England, the Louvre in Paris, France, and wherever else he found antiques to study. On cross-examination as to his qualifications, he gave complete and satisfactory answers to the questions submitted by defendant's counsel as to the various periods and styles of furniture.

Plaintiff's second witness, Mr. Dingeldein, testified that he had been a silversmith for a great many years; that he was practically born in the business; that he had worked in Paris and in the east and for Gorham; that he specializes in repairing antique silver pieces; that he has made a study of antique silver by attending the Academy for Gold and Silversmiths in Germany; that he had visited museums and inspected silverware there, and that he had read books and attended lectures on the subject.

Mr. Blinstrub, called by the plaintiff, testified that he is an appraiser for the Probate Court of Cook County, Illinois; that he appraises art objects, paintings, antiques, glass, china, silver, furniture, and that he specializes in antiques; that he was in the antique business for nineteen or twenty years; that he had studied antiques by examining a great number of pieces in different museums; that he had read books and had given lectures on the subject.

Mr. Francks, called by the defendant, testified that he is an examiner of antiques at the port of Philadelphia and travels throughout the United States examining at the various ports articles which are entered as antiques; that he has been examining antique furniture since 1920 and antique silver, glass, and china since 1927; that he has studied antiques in various museums and in private collections throughout the United States; that he had been consulted by the Pennsylvania Museum; that he had read numerous books on the subject such as Cescinsky, Symmonds, Brackett, Schmidt, Litchfield, Lockwood, McCoy & Edwards, Bradbury, Okie, and several others

and that he assisted the local examiner in the examination of the merchandise in this case.

Mr. Child, called by the defendant, testified that he has been an examiner at the port of Chicago for thirty-four years; that he has examined importations of silver for approximately ten years; that he has made a thorough study of antique silverware; that he has read various books on the subject, has consulted various dealers at different times, has visited the available museums in Chicago, such as the Field Museum, the Art Institute, and the University of Chicago Museum, and studied the antiquities on display in the various exhibits at the Century of Progress held in Chicago; that he passed upon some of the merchandise in the shipment herein involved and was assisted by Mr. William Godfrey who was the supervising examiner of silverware entered at all ports in the United States.

As in many cases presented to the court where the opinion of expert witnesses is given, the experts in this case did not agree, and the duty rests upon the court to weigh the evidence produced as to each individual item.

Four exhibits were introduced in evidence. Exhibit 1 consists of one of the silver spoons imported under item 67, invoiced as "6 Georgian silver spoons"; Exhibit 2 is the merchandise invoiced as "item 473, 1 Sheffield coffee pot"; Exhibit 3 is item 65, invoiced as "Old Sheffield soup tureen"; and Exhibit 4 is a pair of candlesticks from item 80, reading "3 Prs. Old Sheffield candlesticks." Two pairs of candlesticks of the latter item were returned free of duty, but Mr. Grant testified that the pair received in evidence as Exhibit 4 are those which the customs officers returned for duty as not having been produced prior to the year 1830.

Mr. Grant testified further that the six Georgian silver spoons covered by item 67, represented by Exhibit 1, were artistic and in his opinion were produced prior to 1830. Mr. Dingeldein testified that he carefully examined the six spoons and that in his opinion they were produced prior to 1830; that the hallmarks on the spoons indicate that they were produced in 1790 or 1792; that the spoon handles were worn but somebody had straightened the bowls of the spoons and rechased them by going over the lines with a tool, because the bowls showed some new hammer marks; and that such repairs would cost 50 or 60 cents each in this country. Mr. Blinstrub corroborated the testimony of Mr. Grant and Mr. Dingeldein by stating that in his opinion Exhibit 1 was produced prior to 1830. On the other hand, Mr. Francks testified that in his opinion Exhibit 1 was produced prior to 1830 as plain spoons and that perhaps fifty years ago a design was stamped on the bowls and chasing done around the edges; Mr. Child testified that in his opinion the original spoons were produced prior to 1830 but that the pattern of the bowls was changed by either stamping or

tooling lines therein and gilding the inside within the last fifty years, thereby changing a plain spoon into a fruit spoon. We are of opinion that the weight of evidence indicates that the Georgian silver spoons, item 67, are artistic and were produced prior to the year 1830 and that the repairs to which they were subjected were minor and not sufficient to change the classification thereof.

As to Exhibit 2, invoiced as item 473, "Old Sheffield coffee pot," Mr. Grant testified that the article is artistic and in his opinion was produced prior to 1830. Mr. Dingeldein testified that in his opinion the coffee pot was produced prior to the year 1830, giving as his reasons that it is made of Sheffield plate which was rolled on one side only; that if it had been made at a later date it would have been silver covered on the inside also; that prior to 1800 they used the silver on one side only; and that for the last twenty years before electroplating was introduced in 1845 they made Sheffield plate by fusing silver on both sides of the copper. Mr. Blinstrub testified that in his opinion the coffee pot was produced prior to 1830, stating that it is "absolutely original" and the style is indicative of an old piece; that it may have been replated; that "perhaps it was bleeding at some time or other and a coat was given"; and that the cost of such replating was negligible. On the other hand, Mr. Francks testified that in his opinion it was doubtful if the base was produced prior to 1830 although "the balance looks all right"; and that it looks as if the lower part was electroplated and electroplating was first used in 1845. Mr. Child testified that in his opinion the coffee pot was not produced prior to 1830 basing his reasons "principally on the ground that it was electroplated." On being shown Exhibit 2, he stated that the base has more the appearance of being electroplated than the top, but that "the top may be but you can't tell in this light." We are of the opinion that the weight of evidence supports the claim of the plaintiff that item 473, invoiced as "1 Sheffield coffee pot," is an artistic antiquity produced prior to 1830, and that if it was replated the repair was negligible.

As to Exhibit 3, invoiced as item 65, "Old Sheffield soup tureen," Mr. Grant testified that the article is artistic and in his opinion was produced prior to 1830. Mr. Dingeldein testified that the article showed all the earmarks of a Sheffield piece; that it is a piece of Sheffield rolled plate, which means "made from a block of copper and a block of silver, fused together, then rolled out"; that in his opinion it was produced prior to 1830, giving as one of his reasons that the feet were made by a somewhat different method than that used on such articles which were made after mechanics started to work more with steel; he stated as additional reasons for his opinion, the way the mount is made and the way it is rolled over, and the character of the handles; that after 1800 they used different types of tools to produce

stampings; and that he did not see how the body could have been made after the legs, and the legs are absolutely out of the period between 1830 and 1845. Mr. Blinstrub testified that Exhibit 2 is "in pristine condition," that is, in a very good state of preservation, and in his opinion was produced prior to 1830; that there might be some doubt as to the top but the rest of it was produced prior to 1830. On the other hand, Mr. Francks testified that in his opinion the article was produced between 1820 and 1835; that it could have been produced prior to 1830 and could have been produced after 1830; that it is on the border line; that it has the characteristic of Sheffield but "the particular design of the feet and the handles makes it a very doubtful piece as to its exact date." Mr. Child testified that in his opinion the article was produced approximately 1840; that his opinion was formed by consulting with others; and that the article was electroplated. On cross-examination the witness testified to an opinion that the article was produced in 1845 or thereafter. We are of opinion that the weight of the evidence supports the claim of the plaintiff that the old Sheffield soup tureen, item 65, is artistic and was produced prior to 1830.

As to Exhibit 4, which consists of a pair of candlesticks from item 80, invoiced as "3 Prs. old Sheffield candlesticks," Mr. Grant testified that in his opinion the articles were artistic and were produced prior to 1830. Mr. Dingeldein agreed that the candlesticks were produced prior to 1830, stating that he had repaired quite a number of similar articles in France and that they were made shortly after the Napoleonic period which ended in 1815 and that they were of the period which started in 1820. Mr. Blinstrub testified that in his opinion the candlesticks were French and were made before 1830. On the other hand, Mr. Francks testified that in his opinion Exhibit 4 was produced some time between 1820 and 1840; that they were French and might have been produced either after or before 1830. Mr. Child testified that he examined item 80 and returned two pairs of candlesticks free of duty and the other pair dutiable; that the pair returned as dutiable was given a careful examination and it could not be found that any part of it was produced prior to 1830 "and appearances were it was produced subsequent to 1830"; that he did not remember the difference between those candlesticks which were returned free of duty and those returned as dutiable. Mr. Grant was recalled and testified that the candlesticks produced, which were marked "Exhibit 4," were the ones out of item 80 which the collector assessed with duty. We are of opinion that the weight of evidence sustains the claim of the plaintiff that the candlesticks in item 80, upon which duty was assessed, are artistic and were produced prior to 1830.

The other articles upon which the plaintiff seeks to recover the duty paid were not introduced in evidence but the witnesses testified

with respect to their characteristics from an examination of the articles previously made. Mr. Grant stated that many of the articles were sold before the entry was liquidated although some of the articles still remained in the importer's store and further examination by the witnesses was made thereof at the noon recess during the trial.

As to item 5, "Pair of Geo. III silver spoons," Mr. Grant, referring to notes made by him at the time of examination, testified that the articles were a pair of Apostle's spoons having a hallmark stamped in the silver indicating that they were made in 1776; that they were very much worn and were the type of spoons extensively made during the period; that in his opinion they were artistic and were produced prior to the year 1830; and that he submitted the spoons to Mr. Blinstrub for his examination. Mr. Blinstrub testified that he examined the spoons and that in his opinion they were produced prior to 1830. Mr. Child testified that he examined the spoons in item 5; that in his opinion the spoons had been produced originally prior to 1830 but they had been remodeled by changing the bowl of the spoons and thus made into spoons of another kind, but he admitted that he did not have a recollection of the exact form. We are of opinion that the weight of evidence supports the claim of the plaintiff that the spoons in item 5 were artistic and were produced prior to 1830.

As to item 10, "A Sheffield plated cake basket & a tureen & cover," Mr. Grant testified that the articles were made in England, *circa* 1820, and were artistic. On cross-examination he explained that the articles had a shell and scroll border; that they were made of rolled plate and showed a great deal of wear on the bottom and were of the general shape and design made about 1820; that they had the characteristics of Sheffield plate which is an overlay of silver on copper. Mr. Child testified that in his opinion the articles were not produced prior to 1830; that he had a notation that they were electroplated and electroplating did not come into existence until 1845. On cross-examination he testified that he did not remember the articles and his answers were based entirely upon his notes; that if the articles had been produced prior to 1830 he would have made a special notation. We are of opinion that the weight of evidence supports the claim of the plaintiff that the articles in item 10 are artistic antiquities produced prior to 1830.

As to item 14, "A Sheffield plated cruet stand with 8 bottles," Mr. Grant testified that the articles were artistic and, in his opinion, were produced prior to 1830. On cross-examination he testified that the piece was silver on one side only; that it showed the roll plate coming over the edge and the mounts were silver godroon design, silver backed with lead and soldered on to the base of the piece, and that the design was characteristic of the period before 1830. Mr. Child testified that, in his opinion, the article was not produced prior to 1830, giving

as his reasons that the article was electroplated and was of the general style which, upon inquiry, he was advised was not in general use until about 1840. We are of opinion that the weight of evidence sustains the claim of the plaintiff.

As to item 18, "A Sheffield vegetable dish and an oval tray," Mr. Grant testified that the articles were artistic and, in his opinion, were produced prior to 1830. On cross-examination, he stated that the articles had the characteristics of Sheffield plate; that they showed a rolled edge, and had godroon mounts; that there were two articles in this item, one was a round godroon vegetable dish with top handle and roll plate showing on the edge and the other an oval tray of the same style and type of construction, silvered on both sides. On the other hand, Mr. Child testified that, in his opinion, the articles were not produced prior to 1830, giving as his reasons that he had it marked "modern" and he knew of no other reason at the time of trial. We are of opinion that the weight of evidence sustains the claim of the plaintiff that the articles in item 18 were artistic antiquities produced prior to 1830.

As to item 25, "Chippendale urn table," Mr. Grant testified that the article was artistic and in his opinion was produced prior to 1830. On the other hand, Mr. Francks testified that in his opinion it was not produced prior to 1830; that in his opinion it was a reproduction produced approximately seventy-five years ago, judging from the finish, the ageing of the wood, the condition of it, the type of handles and casters; that according to his recollection the casters were fastened with hand-made screws which were not in use until 1851. On cross-examination he testified that the article was a tall urn stand of mahogany; that he did not believe it had any handles or casters. Mr. Grant was recalled and testified that item 25 did not have handles or casters. We are of opinion that the weight of evidence sustains the claim of the plaintiff that the table in item 25 was an artistic antiquity produced prior to 1830.

As to item 60, "Old Sheffield tray," Mr. Grant testified that the article is artistic and in his opinion was produced prior to 1830. Mr. Dingeldein corroborated the testimony of Mr. Grant that the article was produced prior to 1830, but testified that it had been repaired within the last thirty or forty years; that the handles had broken off or had been removed; that they had been replaced, there being evidence that in replacing the handles they had been supported by two long strips of metal on each side, after which the article was electroplated; and that the value of such repairs in this country would be $12 or $15. Mr. Blinstrub testified that in his opinion the article was produced prior to 1830 but that the handles had been repaired more recently and that the value of such repairs in this country would be $8 or $10. On the other hand, Mr. Child testified that in his opinion

the article was not produced prior to 1830, giving as the reasons for his opinion that it was electroplated and there were no signs of workmanship on the piece that would indicate that it was produced prior to 1830. We are of opinion that the weight of evidence sustains the claim of the plaintiff that the "Old Sheffield tray," item 60, is an artistic antiquity produced prior to the year 1830. It appears from the testimony that the article had been repaired by adding pieces of metal when the handles were replaced in restoring the article to its original condition. This repair is of minor importance as it did not enhance the artistic character of the article, citing *J. H. Hutaff, Inc.* v. *United States*, T. D. 46742.

As to item 110, "1 Whatnot," Mr. Grant testified that the article was artistic and in his opinion was produced prior to 1830; that his opinion was based on the fact that "it had very tight brass ferrules on the bottom, with well-worn brass rollers" which were wobbly, the hole being worn very large; that it had an oak-lined drawer at the base; that the uprights were tapering square and made of mahogany; that the bottom shelf had a ridge or lip around three sides and the other three shelves were perfectly plain, a straight line; that the "plain straight line was characteristic of the Georgian period in furniture" which extends from 1714 to 1830; and that it was of a style such as was employed by Sheraton and Heppelwhite. On the other hand, Mr. Francks testified that he examined the piece and believed that it was produced about 1840; that it had original porcelain casters which was one of the features of furniture of the early Victorian period, extending from 1837 to 1850; that he made a description of the article when he examined it and noted at the time that it had porcelain casters; and that he testified from his marks on the invoice, from his recollection, and from his notes. An examination of the invoice shows that the words "Porc, Cast. etc." are inserted in lead pencil near the word "whatnot." Mr. Grant was recalled and testified that brass casters were on the article but he admitted that he was testifying from his recollection and that he had sold the whatnot in August 1936. He testified in November 1937. We are of opinion that the weight of evidence fails to support the plaintiff's claim on item 110.

As to item 153, "1 Mah. T. O. Table," Mr. Grant testified that the article was artistic and in his opinion was produced prior to 1830. He described it as "a small table, approximately 18 inches in diameter, with a tripod base, with a foot that we describe as spade foot; perfectly plain line, somewhat like Sheraton, called Duncan Phyfe in this country, and with a turned column. It showed every sign of age, weathering worn out on the bottom of the feet"; that it "was handled by George Neilson, who is president of the Antique Dealers' Association of Scotland, and he put a date of 1770 on it." On the other

hand, Mr. Francks testified that in his opinion the table was produced after 1830; that "that particular piece, if my recollection serves me correctly, was what we considered a married piece." He explained what he meant by the term "married piece" by stating "they mean by that they take an old base and old top—old parts not produced prior to 1830, but frequently they will take a base that they could consider the base alone might be considered prior to 1830, but it may have had a later top." When asked if he recalled which was the married part, he said: "well, it is a married piece of furniture. It is two different old parts put together. In other words, that particular piece did not originate in its original condition prior to 1830." On cross-examination he said: "We rejected it on the theory that it was not in its original condition. In other words the piece was not as it was produced prior to 1830." Mr. Grant was recalled and stated that in his opinion the table was not a married piece, basing his opinion "upon the fact that the finish of both the base and the top were identical; that the wood was identical, and that there was no evidence of alteration in either piece." On cross-examination he testified that he sold the piece in August 1936 but his recollection was quite distinct. We are of opinion that the weight of evidence sustains the claim of the plaintiff that item 153 was an artistic antiquity produced prior to 1830.

As to item 274, "1 table," Mr. Grant testified that the article was artistic and in his opinion was produced prior to 1830. Mr. Blinstrub testified that "in my estimation, it is an old table, probably before 1830, but it has been repaired. The marquetry has been put in in many places where it had sprung out." When asked if the repairs were negligible he said: "Well, they are an eternal source of trouble, and it may be a constant job. I couldn't say." On the other hand, Mr. Francks testified that the table was a reproduction; that it was produced about 1850 or from fifty to seventy-five years ago. He could not recall the features of the table which caused him to believe it was a reproduction but he had marked it as a reproduction. We note that the invoice contains the note "Rep" in lead pencil near the word "table" on item 274. We are of opinion that the weight of evidence fails to sustain the plaintiff's claim for free entry of item 274.

As to items 283 and 284, both invoiced as "Pr. Decanters," Mr. Grant testified that the articles were artistic and in his opinion were produced prior to 1830. On the other hand, Mr. Francks testified that in his opinion the decanters were produced about 1850, giving as his reasons that the color of the glass and the design indicated that period; that the color of the glass in the early period was bluish lead-like and very much heavier in weight and that these decanters were of a light color. On cross-examination he testified that the earlier

glass was of a bluish color "that shows the presence of metal, lead in particular." Mr. Grant was recalled and testified that the cut glass decanters herein involved were of glass having a blue-gray tone, a smoky appearance, and that the color of the glass was characteristic of glass made before 1830. We are of opinion that the weight of evidence fails to support the plaintiff's claim on items 283 and 284.

As to item 304, invoiced as "A Dresden group of 5 court figures on oval base," Mr. Grant testified that the article was artistic and in his opinion was produced prior to 1830. Mr. Blinstrub testified that the article was absolutely genuine Dresden figures, having earmarks under the glaze; that during the period of reproduction they had a little opening and the marks were placed there; and that the fact that the marks were placed under the glaze influenced him to believe that the article was produced prior to 1830. On the other hand, Mr. Francks testified that in his opinion the piece was produced about 1850 or 1860; that Dresden groups are very rare and extremely expensive and many pieces were produced after 1830, "particularly around the 1850 period." We are of opinion that the weight of evidence sustains the claim of plaintiff that item 304 is an artistic antiquity produced prior to 1830.

As to item 411, invoiced as "A Canterbury," Mr. Grant testified that the article was artistic and in his opinion was produced prior to 1830. On the other hand, Mr. Francks testified that in his opinion it was not produced prior to 1830, stating that the particular piece had characteristics which indicated a later period; that the piece had original machine-made screws which came into existence after 1850. On cross-examination he stated that it was a piece probably seventy-five to eighty years old and that he based his opinion on the condition of the wood, the finish, and the general design. Mr. Grant was recalled and stated that the finish of the piece was "what we call a French polish" which was used almost exclusively before 1830. We are of opinion that the weight of evidence fails to sustain plaintiff's claim on item 411.

As to item 471, "Georgian Mah. 3 pedestal dining table," Mr. Grant testified that the article was artistic and in his opinion was produced prior to 1830. Mr. Blinstrub testified that the table is old but that it had been repaired, not restored. In explaining the difference between repairing and restoring, he said, "Repairs is to make a thing practical so that it can be used and restored is when you take deliberately sections of one and use them on other pieces in order to make two or three pieces." In explaining what repairs had been made on the table, he said, "These three legs—I observe that they are absolutely original, but the frame to which they are attached has been restored, because some of the screws are not old, and the wood is not old, but it is done not with the purpose of deception but

with the purpose of making it a usable piece." Mr. Blinstrub estimated the value of the repairs, if done in this country, would be at least $10. On the other hand, Mr. Francks, who examined the table again during the noon recess of the court, testified that in his opinion the article was produced after 1830, giving as his reasons that the bases are very heavy, which indicates a period after 1830, the top is not the original top, there is evidence underneath the table top that it had been on some other piece of furniture, and that it was a married piece. On cross-examination he stated that the legs of the table were much heavier than the type which were produced prior to 1830, and referred to "Jordon's book on Regency furniture," and that this piece is a made-up piece which has been converted. We are of opinion that the weight of evidence fails to support the plaintiff's claim.

As to items 21, 23, 31, 77, 170, 171, 187, 252, 305, 306, 402, 410, 421, 425, 427, 459, 460, 475, 479, 488, and 489, Mr. Grant did not describe the articles but merely expressed the opinion that the articles were produced prior to 1830 and that they were artistic. On the other hand, the United States examiners who examined the articles on importation testified that in their opinion the articles were not produced prior to 1830 and gave the characteristics of the articles which influenced them in making such return and in some instances described the notes they had made at the time of examination and the meaning of those notes. The defendant's testimony may be summarized as follows:

Item 21, "Pr. Candlesticks": Mr. Child testified that the candlesticks were made of silver and that there was no indication, hallmark or otherwise, that the articles were produced prior to 1830.

Item 23, "1 Pr. plated entree dishes & covers": Mr. Child testified that he made the notation "not antique" on the invoice at the time of examination. That was the only reason he could give but it satisfied him that he found evidence that the articles were not produced prior to 1830.

Item 31, "2 Prs. French Vases": Mr. Francks testified that the articles were French vases of Louis Philippe style and the Louis Philippe period extended from 1830 to 1848.

Item 77, "Old Sheffield kettle": Mr. Child testified that the article had been electroplated and he had been advised on consultation that the pattern was one that was in vogue about 1860.

Item 170, "1 Pr. green vases": Mr. Francks testified that the vases were of green glass typical of the Bohemian type of Victorian glass produced in England after 1830–1840 and certain types up as late as 1870.

Item 171, "1 Bristol vase": Mr. Francks testified that the article was a tall vase, of very heavy glass which would date 1840 or 1850. It was of the Victorian period.

Item 187, "1 game top table": Mr. Francks testified that the article is an old reproduction of fifty or seventy-five years ago, basing his opinion on the price of the article, which was very cheap; that it was Victorian and the Victorian period started in 1837. On cross-examination he described the characteristics of Victorian furniture as heavy, bulbous legs, ornate in features.

Item 252, "1 Entree dish": Mr. Child testified that the entree dish was electroplated and showed no signs of having been produced prior to 1830.

Item 305, "Dresden group of 6 Pastoral figures": Mr. Francks testified that in his opinion the article was produced about 1850 to 1870 giving as his reasons that the design of the piece, the figures, indicate that it was produced after 1830 and that he had discussed many pieces of that type with dealers and with museum people and they always referred to them as having been produced in 1850.

Item 306, "Dresden allegorical of 7 figures": Mr. Francks testified that he considered this piece a production of 1850 or 1860; that "allegorical figures were rather common at that time, that particular type of Dresden figure." On cross-examination he was asked if allegorical figures were produced during the Adam period and that the Adam period ran from 1728 to 1792 and he stated that such was the fact.

Item 402, "1 walnut & Marqueterie centre table": Mr. Francks testified that in his opinion the table was a reproduction produced fifty or seventy-five years ago and that it was his recollection that this piece was not representative of an early period but was a reproduction of an earlier period.

Item 410, "a 4 piece Sheffield tea service": Mr. Child testified that on examination no signs were found that would indicate that the articles were produced prior to 1830 and he marked it "modern" on the invoice.

Item 421, "1 inlaid chess table": Mr. Francks testified that the table was a reproduction about seventy-five years old and that he based his opinion on the condition of the inlay, the general character of the piece, the age of the wood, wear, appearance, and color. On cross-examination he stated that it was not representative of any period prior to 1830.

Item 425, "1 Sheffield plated shell dish": Mr. Child testified that the article was electroplated, a process which was not used until 1845, and that it had a modern appearance and there was nothing to indicate that it was produced prior to 1830.

Item 427, "1 Sheffield plated tea tray": Mr. Child testified that the article was electroplated and no evidence appeared on the article to indicate that it was produced prior to 1830.

Items 459 and 460, each invoiced as "3 Fire Brasses": Mr. Child testified that the fire brasses were produced ten or fifteen years after

1830; that he consulted with Mr. Francks and that his opinion was confirmed by a discussion with Mr. Francks.

Item 475, "1 Sheffield tea pot": Mr. Child testified that the article was electroplated and that the plating could not have been done prior to 1845.

Item 479, "1 Sheffield salver": Mr. Child testified that the article was electroplated and was not a Sheffield plate.

Item 488, "1 Sheffield tea tray": Mr. Child testified that he could not remember the particulars regarding this article but he made a note "not prior" at the time of examination and it was his opinion at that time that the tray was not produced prior to 1830 and he was still of the same opinion. On cross-examination he stated that "not prior" means "after investigation, consideration, and consultation I made up my mind it was not produced prior to 1830."

Item 489, "1 Sheffield tea tray": Mr. Child testified that "at the time of examination nothing was discovered to prove that it was produced prior to 1830. Indications were it was produced after 1830, and my opinion was formed at that time and it is still my opinion."

In the case of *Grace Nichols* v. *United States*, T. D. 49610, the testimony introduced by the plaintiff was to the effect that the articles were produced prior to 1830 whereas the United States examiner testified that in his opinion they were not produced prior to 1830, and he gave the details of the articles which influenced his conclusion. The court held that the testimony of the witness who gave the characteristics of the articles which supported his opinion was entitled to the greater weight. Applying the same rule in this case we find that the weight of evidence supports the claim of defendant that items 21, 23, 31, 77, 170, 171, 187, 252, 305, 306, 402, 410, 421, 425, 427, 459, 460, 475, 479, 488, and 489 were not produced prior to 1830.

As to item 491, "1 Sheffield Sugar Basin and 1 Cream Ewer," Mr. Grant testified that in his opinion the articles were artistic and were produced prior to 1830. On the other hand Mr. Child testified that the indications at the time of examination did not show that the articles were produced prior to 1830, that they indicated that they were produced after 1830 and that there was a discrepancy on the invoice in that the articles were invoiced as "Sheffield," which indicates a plated article, whereas the articles were silver which would have a hallmark if genuine and which is not a plated article. However, the appraiser's return in red ink on the invoice is "table utensils, metal, gold plated, 339—65% & 25%," which indicates that the articles were plated and does not support Mr. Child's testimony that the articles were made of silver. Due to the fact that the plaintiff's testimony was positive and that there is confusion in the testimony of defendant's witness, we are of opinion that the weight of evidence

sustains the claim of plaintiff that item 491 consists of artistic antiquities produced prior to 1830.

We have carefully examined the 130 pages of testimony in the record and do not find that the defendant offered any evidence in respect to the following articles:

Item 382. 1 Gallery Table.
Item 383. 1 Gallery Table.
Item 423. 2 Sheffield Shell Dishes.
Item 424. 1 Sheffield Vase Shaped Tea Urn & Lid.

Mr. Grant testified that each of the articles enumerated above was artistic and in his opinion was produced prior to 1830. We are of opinion that this evidence is sufficient to make out a *prima facie* case and to establish that the articles in items 382, 383, 423, and 424 are artistic antiquities produced prior to 1830. However, the invoice contains a substantial charge for repairs of items 382 and 383. Substantial repairs are dutiable even though the articles themselves are free of duty, citing *Hudson Forwarding and Shipping Co.* v. *United States*, Abstract 28543.

We hold that the articles invoiced as items 5, 10, 14, 18, 25, 60, 65, 67, 80, 153, 304, 382, 383 (except the charge for repairs on items 382 and 383), 423, 424, 491, and 473 are artistic antiquities produced prior to 1830 and that said articles are free of duty under paragraph 1811 of the Tariff Act of 1930 and are not subject to the additional duty at the rate of 25 per centum ad valorem under section 489. As to said items the protest is sustained.

As to the charge for repairs on items 382 and 383 and as to all other items, the protest is overruled. Judgment will be entered accordingly.