(C.D. 4177)

Carson M. Simon & Co. *v.* United States

United States Customs Court, First Division

(Decided February 10, 1971)

*Allerton deC. Tompkins* (*Irving Levine* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Herbert T. Pos-
ner* and *Gilbert Lee Sandler*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: The problem in the present case is to determine
the proper tariff on items invoiced as ukuleles that were imported
from Japan through the port of Philadelphia in 1964. The articles—
which the parties agree are in chief value of wood—were assessed duty
by the government at the rate of 34 percent under item 725.06 of the
tariff schedules as "[o]ther stringed [musical] instruments." Plaintiff
contends that this assessment is erroneous and that the importations
are properly dutiable at 26 percent under item 737.60 as "[t]oy musical
instruments." Alternatively, plaintiff claims that the articles are
dutiable at only 16⅔ percent under item 207.00 which covers
"[a]rticles not specially provided for, of wood."

The imported article is in the shape of a standard ukulele and
measures 20¾ inches in length and 6½ inches in width (at its widest
point). Its body is constructed of wood as are the tuning pegs. It
has a plastic fingerboard and four strings made of nylon.

Turning now to the testimony, plaintiff's first witness, the presi-
dent of Schoenhut, Inc., the ultimate consignee of the imported arti-
cles, testified that Schoenhut is in the sole business of manufacturing
and wholesaling toys; that its only customers are toy stores and toy
departments throughout the United States; and that it sells the im-
ported articles as toys to such customers. He stated that Schoenhut
paid $14.63 per dozen (approximately $1.22 each) for the imported
articles and charged its customers $21.60 per dozen ($1.80 each).[1] On
eight or ten occasions, the witness said he had seen the imported arti-
cles actually used. On such occasions he testified that he had seen the
articles used by children. "Like most toys," he said, "they just bang on
it or string on it."

Plaintiff's second witness was Vito Spiotta, a retired musician,
who at the time he testified was a teacher of all fretted instruments,
including the guitar, ukulele, mandolin, etc. He said that he had been
playing these instruments since 1888 when he was six years old. He

---

[1] The retail price of the articles was not supplied.

explained that stringed musical instruments had basic tuning requirements; that this was true of a ukulele; that a stringed instrument must be in tune in order to function as an instrument of music; and that if a stringed musical instrument does not keep its tune, it cannot be played alone nor with other instruments.

Spiotta testified that he had examined the import in question and had determined that it would not keep in tune "because the pegs * * * loosen up * * * and it gets out of tune." Using a pitch pipe, he tuned the imported article and then started to play a few chords. However, after about five seconds, it went out of tune. He then retuned it to demonstrate how far it had gone out of tune. He conceded that stringed musical instruments also go out of tune, but added that at least he could play a whole tune on a stringed instrument—which he could not do on the import.

Finally, Spiotta testified that he did not consider the import to be a musical instrument because it did not hold a tune, and for that reason also he could not teach on it. He added that as a professional he would not use the importation because it assertedly had no tone. In his opinion, it was merely a plaything for children.

Defendant presented as its witness Dr. Michael S. Giamo, Assistant Director of Music Education for the City of Philadelphia, which position he has occupied for the past 17 years. In that capacity, he said, his job is to improve musical instruction in the school system and to prepare specifications for all musical instruments that the city buys for the schools. He stated, however, that he does not buy ukuleles. Prior to going to work for the City of Philadelphia, the witness testified that he had been a professional musician for a number of years and that he had started on the violin at an early age and later studied the bassoon and clarinet. He added that he has a doctorate in music from the Philadelphia Conservatory of Music.

With further respect to his qualifications, the witness testified that he himself was not a ukuleleist; that he had never played a ukulele; and that he had no proficiency with a ukulele. He stated, however, that as a professional musician he had played for a number of shows at which Hawaiian people had played ukuleles that resembled the importation, and that he had friends who were professional musicians who played a ukulele. In fact, he said that his older brother owned one "and his kids would fiddle around with it." [2]

Coming now to his substantive testimony, Giamo stated that the import had all the physical characteristics of a ukulele and that, in his opinion, it was a musical instrument and not a toy. One basis for his opinion, he said, was that the import is strung with nylon strings and is thus like other stringed instruments in this regard; the frets

---

[2] The record is unclear as to whether the instrument owned by the witness' brother was similar or dissimilar to the article in issue here.

are properly placed or graduated; there is a nut in proper position above the frets to prevent the strings from rubbing against the frets while vibrating; the tuning pegs are well tapered so that when they are pressed in and turned, the friction is sufficiently tight to hold the strings; the tailpiece is well made and well proportioned to receive the knotted ends of the strings; and the strings are equidistant. Another basis for his opinion, he stated, was that the import is similar in color and design to an article having a retail price of $14.50 which was illustrated in a catalogue issued by Berger's Music Mall of Philadelphia and which was described therein as a "standard size uke * * * top favorite for playtime music," with the size indicated to be $6\frac{1}{2}$ x $20\frac{3}{4}$ inch size—the same size as the importation involved here. The witness said that he had frequently used this catalogue as a reference.[3]

On a related matter, Giamo testified that all stringed instruments have a propensity to go off tune because of atmospheric conditions, moisture in the air, and the stretching of the strings when they are plucked and pulled in the course of playing or chording. He stated that the strings on the import in question were new; that all new strings have to be tuned for a number of hours before they reach their maximum point of stretching; that the strings on the import were not stretched to maximum tolerance and thus did not maintain pitch; and that professional players play a newly stringed instrument for a number of hours before playing in a concert.

On cross-examination, the witness testified that although (as previously indicated) he was not a ukuleleist, he was able to tune the sample importation and to play a scale and chord for the court. However, after this short exercise, the instrument had to be retuned. He then played a chord for three seconds following which three of the four strings again had to be retuned.[4]

---

[3] At trial, plaintiff objected strenuously to the admission in evidence of this catalogue on the grounds, among other things, that the witness was not qualified to determine from where the catalogue came; who prepared it; who determined that the ukeleles there illustrated constituted musical instruments; and plaintiff had no way of knowing what basis was used in this regard by the person who prepared the catalogue. The judge presiding at the trial—who was not a member of this division—overruled the objection and plaintiff renews its objection here. However, for reasons that will appear later, we believe it unnecessary to rule on this renewed objection.

[4] At the conclusion of Giamo's testimony, plaintiff moved to strike it *in toto* on the ground that he was not qualified to testify about the qualities, character and musical capabilities of an instrument he did not and could not play. The judge presiding at the trial overruled the motion to strike—and plaintiff renews its motion here. We adhere to the trial judge's ruling. As pointed out in *Tanross Supply Co., Inc.* v. *United States*, 58 CCPA 26, C.A.D. 1000 (1970) (slip op. Dec. 3, 1970, p. 15), "In its capacity as arbiter of admissibility, the trial court had only to determine that [an expert's] evidence was relevant and competent in the sense that his special training and/or experience qualified him to offer his opinion on the point in issue, *McCormick on Evidence*, § 69, p. 149 (1954)." Moreover, considering Giamo's academic background and professional experience, we find that the fact that he cannot play a ukulele does not disqualify his testimony. For a witness qualified as an expert in the field of music does not have to be proficient at playing a particular instrument in order to testify about that instrument. See e.g., *United States* v. *L. Oppleman, Inc.*, 28 CCPA 298, 301, C.A.D. 158 (1941).

Considering now the legal aspects, "the intent under the tariff schedules is that an article should be classified as a true musical instrument rather than a toy musical instrument, only if it is of such quality and character as would ordinarily be used for serious musical study or use." *Montgomery Ward & Co.* v. *United States*, 62 Cust. Ct. 718, 723, C.D. 3853 (1969). See also *United States* v. *B. Illfelder & Co.*, 57 Treas. Dec. 687, T.D. 44002 (1930). Based upon the entire record, we conclude, for the reasons that follow, that the importation in question is not a true musical instrument but is, in fact, a toy.

For one thing, the record establishes that the import is an extremely inexpensive article, in the form of a ukulele, that is incapable of keeping a tune throughout an entire musical selection. In this connection, it was the opinion of plaintiff's witness Spiotta, an expert on stringed instruments, and the only witness with personal knowledge relating to ukuleles as musical instruments, that the importation could not keep a tune; that a stringed musical instrument could not be played with other instruments if it were not in tune; that he could not teach a student to play the ukulele by using the imported article; and that it was not a musical instrument but simply a toy. Further, the opinion of this expert was corroborated when it was shown at trial, in the course of several demonstrations, that the import could not keep a tune. Of course, an instrument which is incapable of keeping a tune throughout an entire musical selection is scarcely of such quality and character as would ordinarily be used for serious musical study or use.

The record, moreover, establishes that the consignee of the importation in issue handles only toys, and that the importations were sold as toys and then only to toy outlets. Such merchandising practices— while not determinative—have obvious probative value in ascertaining the nature of the import. See e.g., *Montgomery Ward & Co.* v. *United States, supra*, 62 Cust. Ct. at 724. A further consideration is the evidence that it was used by children as a toy to bang on or "string on it."

It is true that defendant's witness Giamo was (as we have seen) of the opinion that the imported merchandise constituted a musical instrument rather than a toy. However, in the circumstances of this case, the weight to be given to this testimony is somewhat impaired for the following reasons: First, he lacked any experience with or proficiency on the ukulele. Second, his opinion was based in part upon the fact that he considered the present importation similar in color and design to a ukulele he saw illustrated in a catalogue that he used as a reference. However, there is nothing in the record to establish that the import is, in fact, similar in material characteristics to the illustrated ukulele. For one thing, the retail price of the ukulele illustrated in the catalogue was $14.50, while the wholesale price of the

importation was $1.80. Thus assuming the retailer of the imported article realized a markup of 100 percent and sold it for $3.60, the retail price of the illustrated ukulele would be some four times more expensive than the importation. Beyond that, while the ukulele illustrated in the catalogue is described therein as having a natural mahogany finish, the witness did not know whether the sample importation before him had "a mahogany front." In addition, the ukulele illustrated in the catalogue has what appears to be metal tuning pegs which are described as non-slip tuning pegs, as contrasted with the wooden pegs in the importation.[5]

We are quite mindful of the principle that when expert witnesses offer conflicting conclusions, the court should attach greater weight to the testimony of the expert who provides the details which influenced and supported his conclusion rather than to an unsupported expert opinion. See e.g., *Grant Art Galleries* v. *United States*, 2 Cust. Ct. 341, 354, C.D. 157 (1939). As to this, defendant insists that its witness supplied the details (i.e., his physical analysis of the sample importation) upon which he based his opinion and therefore his testimony should be given greater weight. But the plaintiff's expert witness had his opinion conclusively corroborated by the fact that the representative sample of the importation was shown at trial to be incapable of keeping a tune. True, defendant's expert witness offered an explanation for the importation's failure to maintain its tune for any length of time. However, considering (i) that such testimony was uncorroborated and (ii) that the witness lacked experience with or proficiency on the ukulele, we must conclude that the explanation is insufficient to rebut the weight of the evidence indicating that the import is not a serious musical instrument but rather a toy.

The protest is sustained. Judgement will be entered accordingly.

(C.D. 4178)

---

[5] A further and more accurate comparison between the import and the illustrated ukulele, such as a comparison of their tonal quality and capability of keeping a tune, is, of course, not possible since the actual instrument depicted in the catalogue was not offered in evidence. It is to be noted that the judge presiding at trial offered to adjourn the trial to the next day to enable defendant to obtain and offer in evidence the ukulele illustrated in the catalogue. Defendant, however, did not avail itself of this opportunity.